KUKUINUI (w) and KAUKA, her husband, *vs.* NAIHE (k) and LIKIA (w.)

APPEAL FROM DECISION OF THE CHANCELLOR.

JULY TERM, 1885.

JUDD, C. J.; McCULLY AND PRESTON, JJ.

Plaintiffs, old and feeble Hawaiians, desired to make a will in favor of their grandson, Naihe, but were induced to make a deed instead. It was understood between the parties that plaintiffs were to live on the land and be supported by Naihe during their lives, but this was not put in the deed. Naihe afterwards made a deed of the property to Likia, his mistress.

Held, affirming the decision of the Chancellor, that the intention of plaintiffs was to reserve a life interest and to charge Naihe with their support; that they executed the deed to Naihe under mistake of its legal effect, and that it did not express their true intention; and that knowledge of sufficient facts to put her on enquiry was brought home to Likia.

Ordered that both deeds be cancelled.

OPINION OF THE COURT, BY PRESTON, J.

THIS is an appeal by the defendant, Likia, from a decree of the Chancellor, whereby he adjudged and ordered two deeds, the subject of this suit, to be cancelled and annulled.

Upon considering the evidence recorded in this case, the Court is of opinion that the construction placed upon the evidence by the Chancellor is correct; and that, at the time of the execution by the plaintiffs of the voluntary deed of the 26th day of January, 1880, the plaintiffs did not fully understand the nature and full effect of the deed, and consequently the decree of the Chancellor must be affirmed.

The case is clearly within the ruling of the English Court of Appeal in *Dutton vs. Thompson*, 49 Law Times R. N. S. 109.

The appeal is therefore dismissed with costs.

*M. Thompson*, for plaintiff.

*A. Rosa*, for defendant, Naihe.

*Kinney & Peterson*, for defendant, Likia.

Honolulu, September 25, 1885.

DECISION OF THE CHANCELLOR, APPEALED FROM.

I find the following undisputed facts in the case:

Kukuinui, a very aged Hawaiian woman, living with her husband, Kauka, also quite aged, upon her own land,—where they had been for thirty years—a small house-lot on Smith street, Honolulu, and being precariously supported by the charity of her grandson, Naihe, and other friends, desired, as she was old and feeble, to make some disposition of her property. Mr. C. K. Kakani, a Hawaiian lawyer, who was visiting near by, was called in. This was in 1880. These old people said they desired a will to be made in favor of their grandson, Naihe, a young man now aged about 23. Kakani advised them that a will would involve expense and provoke litigation, and advised a deed. To this they consented, and a deed was drawn, which they signed and acknowledged, and which was duly recorded. It conveys the land to Naihe absolutely "in consideration of the sum of one dollar, paid to us by Naihe, our grandson." These old people had no other property. The land in question is variously estimated as

worth $800 and $3,000. They continued to live on the premises without disturbance, and live there now. Naihe was a sailor in the coasting trade. He became ill and went to the hospital for treatment. A few years after receiving this deed, he consorted with a woman named Likia, and they lived together on the premises in question, in a house which she and a former paramour of hers, Kimo (a band boy), had built thereon, under a lease from Naihe. Likia took care of Naihe during his illness, and occasionally visited him while at the hospital. In July, 1884, Mr. J. W. Kalua, a Hawaiian lawyer, was sent for to make a deed from Naihe to Likia. On his reaching the house where they were, Mr. Kalua asked what the consideration of the intended deed was to be, and Naihe said, "one dollar." On Mr. Kalua's reminding them that this was not an ordinary price for land like this, Naihe said, "I had an illness some time ago, and I was very nearly dead, and it was this woman that cared for me, and I now think you better put into the deed $100, and the land shall be the price or pay to her for her care of me." He says further, "I asked the reason for making the deed, and he gave it, *i. e.*, that she had cared for him in his illness, provided him with food, etc. This was the reason he gave. No money passed at the time. I saw none. No conversation about the passing of money before or after the drawing of the deed, that I heard." Both Kukuinui and Kauka say they told Naihe that they wished him to support them during the remainder of their lives, and that he consented to it. Also that they were to remain on the land so long as they lived. But that these provisions were not put in the deed, and that they knew this when the deed was read. Naihe, whose answer admits the allegations in the bill, testifies to the same effect. But Kakain, and others who were present when the deed was executed, say that nothing was said by any one, either that Naihe was to support them, or that a life estate was to be reserved to the grantors.

I cannot resist the impression that these grantors, feeble in body and mind, through great age and scant food, ignorant of the effect of legal instruments, relied upon the oral promise of Naihe to support them, and so made no protest when the deed was read to them. If they had been told that the effect of the deed was to pass to their grantee the right of immediate possession of the

land, and that he had not bound himself to support them, they would not have signed it. Their deed was a voluntary settlement or conveyance. It was drawn by an ignorant man, who presumed to advise these people, almost in *senile dementia*, to consent to what was never in their minds, if, indeed, they were capable of any intention further than that after their death they wished their grandson to have their property. Naihe knew this was the fact when he took the deed. These old people remained on the land, and were furnished by Naihe with food or money, as before, whenever he had money or food. If it were not for the deed to Likia, probably, they would have continued in this way, until death released them, and the Court would not have heard from them.

But Naihe has parted with his title to Likia. She has produced witnesses whose credibility is not attacked, who swear that she received $100 from her father, Opiopio, a respectable cane planter at Waimanalo, and paid it to Naihe as the consideration of the deed. The only way which this apparently credible testimony can be reconciled with Mr. Kalua's statements as to what was actually agreed upon between them as to the consideration for the conveyance, is that Likia, seeing that the deed recited the consideration of $100, thought she had better pay it to secure her title, and Naihe took the money. But does this place her in the attitude of a *bona fide* purchaser? I think not. She was present at the time the deed of the old people was made to Naihe. During the time between this deed and the conveyance to herself, she was living with Naihe as his mistress, and it is not a violent assumption to say that she must have known the circumstances under which the prior deed was executed. At any rate, she knew, for she admits it, that when she took her conveyance, the old people were still living on the land, and were old, feeble and poor, and she says she has no intention of dispossessing them, and that Naihe told her that if he sold the land to her, she was not to drive the old people off. I consider that the conveyance from Naihe was also a voluntary settlement, a gift to the woman for whom he had an affection.

This Court held, in *Afong vs. Afong, ante,* p. 191, adopting the summary of the law from Bispham, page 67, "That where

58

the intent to make an irrevocable gift is perfectly apparent, or when even in the absence of such a clear intent, a sufficent motive (such as protection against the grantor's own extravagance and the like) for making such a gift exists, the settlement cannot be disturbed. But where the deliberate intent does not appear, and no motive exists, the absence of a power of revocation is *prima facie* evidence of mistake."

In the case before me, I feel satisfied that the intention was to reserve a life interest to the grantors, and to charge the grantee with the support of the grantors. The same result would have been effected by a will, as was originally desired, which would be inoperative until the death of Kukuinui, and so far as the obligation to support was concerned, a failure to do this might induce a revocation of the will.

I think enough has been shown to make it certain that these aged people executed the deed to Naihe under mistake of its legal effect, and that it did not express their true intention. Knowledge of this, or of sufficient facts to put her upon inquiry, is brought home to Likia, and the gift to her is similarly affected.

The question as to the exact relief which should be afforded to these plaintiffs is one of some difficulty.

The plaintiffs, by reason of their mental and bodily infirmities, are likely to be easy subjects of further imposition. They will have to depend, as for many years past, on the charity of friends and neighbors for food.

The bill prays that the deed from Naihe to Likia may be declared void and cancelled, and that Naihe, in order to carry out the original agreement, may be ordered to give bond with surety to pay ten dollars per month for the support of the plaintiffs, so long as they live, and in default of this being done by him that the deed be declared void.

I am averse to thus favoring Naihe, who was willing, by his deed to Likia, to perpetrate a gross wrong upon his confiding grandparents. This Court cannot undertake to leave it optional with him to support the old people, or have his deed cancelled.

I think both deeds should be cancelled, and will sign a decree to this effect.

Honolulu, June 25, 1885.